NICHOLAS & TOMASEVIC, LLP
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jake W. Schulte (SBN 293777)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jschulte@nicholaslaw.org

Attorneys for Plaintiff ALICE WILBURG,
individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE WILBURG, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>IVUEIT, LLC, an Ohio limited liability company; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 3:24-cv-02642-AMO<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1) FAILURE TO REIMBURSE EXPENSES [LAB. CODE, § 2802];**<br><br>**(2) FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS [LAB. CODE, § 226];**<br><br>**(3) FAILURE TO COMPENSATE FOR ALL HOURS WORKED / NON-PRODUCTIVE TIME [LAB. CODE, §§ 226.2, 1194, 1197, 1197.1];**<br><br>**(4) FAILURE TO PAY OVERTIME [LAB. CODE, § 510];**<br><br>**(5) FAILURE TO PROVIDE MEAL PERIODS [LAB. CODE, § 226.7];**<br><br>**(6) FAILURE TO PROVIDE REST BREAKS [LAB. CODE, § 226.7];**<br><br>**(7) FAILURE TO PAY WAGES WHEN DUE [LAB. CODE, §§ 201-204];**<br><br>**(8) FAILURE TO MAINTAIN EMPLOYMENT RECORDS [LAB. CODE, § 1174]**<br><br>**(9) UNFAIR BUSINESS PRACTICES [BUS. & PROF. CODE, § 17200 ET SEQ.].** |

|  | **FIRST AMENDED REPRESENTATIVE ACTION FOR:** |
|---|---|
|  | **(10) CIVIL PENALTIES UNDER LABOR CODE'S PRIVATE ATTORNEY GENERAL ACT ("PAGA") [LAB. CODE, § 2698 ET SEQ.].** |
|  | **DEMAND FOR JURY TRIAL** |

ALICE WILBURG ("Plaintiff"), on behalf of herself and all others similarly situated, brings this Class and Representative Action against Defendant IVUEIT, LLC, an Ohio limited liability company ("iVueit" or "Defendant"), and DOES 1 through 20, inclusive, and alleges on information and belief as follows:

## INTRODUCTION

1. Defendant iVueit is a nationwide property inspection company that audits, inspects, and provides visual verification of property status for third-party clients. It offers clients real-time monitoring and inspections of their property at an affordable cost. It does so through a mobile application that permits its clients to submit customizable requests for property inspections. It offers its customers instant, real-time information, geo-coded and time stamped photos, progress tracking, customizable surveys, escalation features, and much more.

2. Defendant engages workers it calls "Vuers" to perform the actual property inspection and related reporting requirements like photography and surveys. Each unique project is called a "Vue." Vuers get paid for collecting photos and completing survey data in their local areas for completing Vues. The process to obtain work is simply: (1) download the iVueit application; (2) check the map for open Vues in the Vuer's geographical area; (3) claim a Vue; (4) do the assigned work (e.g., taking photos and completing surveys) within the designated time parameters before the Vue expires; and (5) submit the Vue to iVueit for review and get paid. All the Vuer needs is transportation and a data-enabled mobile device.

3. Vuers are a core and fundamental component of Defendant's property inspection company that must operate under the controls in place to satisfy iVueit's customer base. Yet, Defendant claims they are not employees and instead "independent contractors."

4. By refusing to recognize its Vuers as employees, Defendant cheats these individuals out of protections provided by California labor laws such as minimum wages, overtime pay, and reimbursement of business expenses. Defendant's misclassification of its workers (i.e., Vuers) also robs the State of important employee tax revenue and gives Defendant an undue advantage over law-abiding competitors who bear the necessary expenses associated with employing similar workers.

5. This Class and Representative Action seeks recovery on behalf of Plaintiff and other similarly situated Vuers in California for violations of California's Labor Code and the applicable Industrial Welfare Commission Wage Orders ("Wage Orders") along with violations of California's Unfair Competition Law predicated upon violations of California's Labor Code and applicable Wage Orders.

**JURISDICTION & VENUE**

6. iVueit removed this action from the Superior Court of State of California for the County of Alameda to the United States District court for the Northern District of California, pursuant to 28 U.S.C. Sections 1332, 1441, 1446, and 1453. It did so on the grounds that, when the initial Complaint was filed and presently, this Court has original jurisdiction under the Class Action Fairness Act ("CAFA").

**PARTIES**

7. Mrs. Wilburg is and at all relevant times was a resident of California. She formerly worked as a Vuer for Defendant and was classified as an independent contractor.

8. iVueit, LLC is an Ohio limited liability company with a principal business address at 950 Goodale Blvd., Suite 200, Columbus, OH 43212.

9. Plaintiff does not know the true names and/or capacities, whether individual, partners, or corporate, of Defendants sued herein as DOES 1 through 20, inclusive, and for that reason sues said Defendants under fictitious names. Plaintiff will seek leave to amend this Complaint when the true names and capacities of these Defendants have been ascertained. Plaintiff is informed and believes and thereon alleges that these Defendants are responsible in whole or in part for Plaintiff's alleged damages.

10. At all times mentioned, Defendants were the agents, alter egos, servants, joint venturers, joint employers, or employees for each other. Defendants acted with the consent of the other Co-Defendants and acted within the course, purpose, and scope of their agency, service, or employment. All conduct was ratified by Defendants, and each of them.

## GENERAL ALLEGATIONS

**A.    iVueit's Business Model**

11. iVueit was founded in 2020 and operates a nationwide property inspection company. iVueit serves multiple industries including facilities management, residential, municipalities, insurance, and retail. Clients from these industries benefit from iVueit's services because they oftentimes struggle to manage information on their multi-site and dispersed portfolios. Instead of tying up their own resources, and at a fraction of the cost, iVueit offers these institutional clients "boots on the ground" by connecting them with iVueit's on-demand network of Vuers that retrieve and consolidate photo and survey date within 24 hours for a small fee (anywhere from $5-$100). *See* https://www/ivueit.com.

12. To fulfill promises it makes to its customers, iVueit engages "Vuers" to perform the actual property inspection and related reporting requirements like photos and surveys of the property which are called "Vues." Defendant tells Vuers that they can get paid for collecting photos and completing survey data in their local areas. It offers Vuers training and tutorials to teach them how to complete the required work.

13. The process for Vuers to obtain work involves: (1) downloading the iVueit application on a smart phone; (2) checking the map for open Vues in the Vuer's geographical area; (3) claiming a Vue; (4) doing the assigned work (e.g., taking photos and completing surveys) within the designated time parameters before the Vue expires; and (5) submitting the Vue for review by iVueit and getting paid the assigned fee. All the Vuer needs is reliable transportation and a data-enabled smart phone with the iVueit application. Most – if not all – Vuers utilize their own motor vehicles and personal cell phones to complete Vues.

14. Once the iVueit application is downloaded, Defendant notifies Vuers when a Vue is available and nearby. From there, the Vuer reviews the instructions and claims the Vue by clicking

on the appropriate prompt. The Vuer must commit to completing the scope of the work within the designated time parameters, and for a non-negotiable price, before the Vue expires. Once a Vue is accepted, during the window to complete the Vue, Defendant requires Vuers to remain on-call and available. Per its terms and conditions:

> Accessibility of the VUER. During any period in which you have active but uncompleted assignments, you must be readily accessible to IVUEIT by voice or text message via the IVUEIT App at least between 8 a.m. and 9 p.m. in your time zone, and at all times while actively performing an assignment for IVUEIT. You agree to respond to all communications from IVUEIT in a timely and expeditious manner. Nothing in this provision prohibits you from completing work for any other business entity during these periods of time, IVUEIT only seeks clear lines of communication with you during the pendency of the assignment. *See* https://www/ivueit.com/terms and conditions/.

15. Once committed, the Vuer goes to the assigned property address and, using the Vuer-facing mobile application, takes the specific photos requested, completes the assigned survey, and submits the Vue. From there, an iVueit employee reviews the work product and can follow-up with the Vuer as needed, and thereafter relays the information and data to the client.

16. Vuers are paid per-Vue and only upon satisfactory completion in the eyes of iVueit. Vuers earn anywhere from $5-$100 per successfully completed Vue. This is "piece rate" pay. *See* Labor Code, § 226.2.

17. Vuers receive a non-negotiable, per-job (i.e., per-Vue), piece-rate-pay for their labor. In this way, Vuers earnings are not modified where a job takes longer than planned due to circumstances out of their control, such as bad road or weather conditions, construction, accidents, or obstacles encountered during the on-site property inspection. Vuers also receive no pay for non-productive time such as the time spent traveling to a Vue, time spent waiting for access to the on-site location for purposes of completing the assigned property inspection, and other time in which the Vuers are not actively traveling to and from Vues.

18. Needing to satisfy its customers and provide the services they want; Defendant retains and exercises a great deal of control over its Vuers. iVueit retains strict control over its operations through its terms and conditions as well as its published policies on its website and application, what it collectively calls its "Policies." The Policies are subject to iVueit's complete control as it can

modify or change them at any time with binding effect on its workers. Under the Policies, among other things, Vuers must complete the work under the assigned specifications including iVueit's timeline for the work. If the Vuer does not complete a Vue in time or up to iVueit or its customer's standards, it will not pay for the work and instead reassign the Vue to another Vuer. Defendant retains sole discretion regarding whether payment is due after work is complete.

19. Only Defendant has contact with the customers. Vuers are forbidden to speak with them. iVueit handles all customer service issues in its sole discretion and has complete control to make decisions regarding any disputes between Vuers and third-party customers. All work and submissions must flow through the iVueit application to iVueit who reviews, monitors, and quality controls the Vuers' work product before submitting the requested information and data to the client.

20. Defendant also advises Vuers that they have no expectation of privacy because of its network monitoring technology. iVueit reserves the right to monitor, intercept, and review any activity in the application in addition to any social media use by the Vuer.

21. Still further, Defendant requires Vuers to obtain and use data-enabled smart phones and applications that support its application at the Vuers' cost. When performing work for iVueit, certain data like geo-location and time stamps must be shared via the application. Defendant tracks this and other performance indicators which it uses to rank Vuers. Rankings impact Vuer standing with iVueit and its customers.

22. Vuer vehicles are also tightly regulated. iVueit requires valid insurance and licensure. It forbids any carrying of weapons in the Vuers' vehicles. There is also a "dress code" that Vuers must follow. They must present to a property inspection in a "professional manner" including mandates such as no piercings beyond standard earrings, no backwards hats or du-rags, no offensive verbiage on clothing, no rips or tears in clothing, no short or skimpy bottoms, no sagging pants, no excess revealing of skin, no tank tops, and appropriate foot war.

23. A Vuer can only make one account under his/her name. Vuers cannot share accounts or have others perform work (via assignment) from their registered account in their personal name. Failure to comply with iVueit's Policies can result in termination and discontinued use of the Vuer application.

**B.     iVueit Misclassifies Vuers**

24.     Despite the integral role of Vuers and the control retained and exercised over them, iVueit denies any employment relationship with its workers like Plaintiff.  This is willful misclassification under California law.  *See* Labor Code, § 226.8.

25.     Integral to Defendant's property inspection business, iVueit utilizes the labor of Vuers, like Plaintiff and the Class she seeks to represent, to carry out property inspection services for Defendant's third-party customers. Defendant labels Vuers as "independent contractors." However, these Vuers perform perhaps the most central part of Defendant's property inspection business: the instant, real-time information, geo-coded and time stamped photos, progress tracking, and customizable surveys for Defendant's customers. The work of Vuers is necessary to Defendant's property inspection business. In short, property inspection workers (i.e.,Vuers) are an essential and fundamental component of Defendant's business model.

26.     By refusing to recognize its gig workers as employees, Defendant cheats these individuals out of protections provided by California law such as by failing to pay all hours and all compensation due, including, by failing to pay all minimum, regular, and overtime wages, non-productive and waiting time pay, on-call pay, rest break compensation, meal and rest break premiums, and reporting time pay, and by failing to reimburse business expenses.

27.     As to minimum wages, once a Vuer accepts work, they are on call from 8 a.m. to 9 p.m. local time until they complete the Vue, even during hours when they are not directly engaged in carrying out the Vue.  California requires payment at the minimum wage for such on-call, non-productive time when the worker is subject to the control of the employer.

28.     Piece-rate workers, like Vuers, must also be paid separately for the time they are able to take a rest break.  iVueit does not pay separately for any break time resulting in owed rest break premium pay for every shift during which the worker qualifies for rest breaks under California law.

29.     As to overtime pay, iVueit pays none despite many of the hours worked by Vuers, whether on call or actively engaged in a Vue, exceeding 8 hours in a day or 40 in a week.

30.     There are also instances where Vuers perform work or present for work but are not actually put to work if a Vue is given to another Vuer or if the Vue is canceled, etc.  In such a case,

the worker should receive minimum wage for the time spent on the Vue in addition to any reporting time pay that may be due for a short shift.

### C.     iVueit's Failure to Reimburse

31. By policy and practice, iVueit does not reimburse Vuers for necessary business expenses. A data-enabled smart phone and a properly insured vehicle are required for work. But the Vuers are expected to pay all costs incurred in performing Vues including, but not limited to, cell phone expenses, data and voice plans, mileage, registration, insurance, and routine inspection/maintenance.

### D.     iVueit's Failure to Comply with Other California Wage and Hour Laws

32. As explained herein, as a result of its unlawful misclassification, Defendant fails to provide Vuers overtime pay, fails to make meal and rest breaks available to Vuers, fails to pay Vuers separately for rest periods, even if taken, fails to pay wages when due, and fails to provide Vuers complaint wage statements in violation of California law.

33. Defendant also requires workers to agree to terms in writing known to be prohibited by law, including the agreement between Plaintiff and other aggrieved employees and Defendant that allows failure to reimburse Plaintiff and other aggrieved employees for business expenses reasonably incurred. Defendant also requires workers to work longer than the maximum hours and violative of standard conditions of labor fixed by the Industrial Welfare Commission.

34. Defendant's violations detailed in this Class and Representative Complaint implicate, among others, California Labor Code sections, including, but not limited to, the following: 200 *et seq.*, 201-203, 204, 210, 216, 218.5, 218.6, 221, 223, 224, 225.5, 226, 226.2, 226.3, 226.7, 226.8, 400 *et seq.,* 402, 404, 405, 408, 432.5, 450, 510, 512, 558, 1174, 1194, 1194.2, 1194.5, 1197, 1197.1, 1198, 1199, 2775, 2800, 2802, and 2804, California Business & Profession Code section 17200 *et seq.,* California Code of Regulations section 11040 *et seq.,* and applicable Industrial Welfare Commission Wage Orders.

### CLASS ALLEGATIONS

35. Pursuant to Code of Civil Procedure, section 382, Plaintiff brings this lawsuit as a class action on behalf of herself and all other similarly situated members of the Class, defined below.

1  This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of class actions.

36. **Class Period.** The Class Period shall be defined as: four years preceding the date that the first Complaint in this action is filed, until the full resolution of this action, plus any time that may be attributed to equitable or other forms of tolling.

37. Plaintiff seeks to represent the following Class of persons:

> **Class:** All individuals paid for property inspection, site photograph services work, and/or other Vue-related work in California at any time during the Class Period that was sourced through the Ivueit App.

38. The Class does not include Defendant, its officers, and/or its directors; the Judge to whom this case is assigned; or the Judge's immediate family or staff.

39. Plaintiff reserves the right to amend the above Class and to add additional classes and sub-classes as appropriate based on discovery, and the specific theories of liability, among other reasons.

40. **Numerosity.** The potential members of the Class as defined are so numerous that joinder of all the members is impracticable. While the precise number of the members of the Class has not been determined, Plaintiff is informed and believes that there are hundreds to thousands of individuals meeting the Class definition. Defendant has access to data sufficient to identify the members of the Class.

41. **Adequacy of Representation.** The named Plaintiff is fully prepared to take all necessary steps to fairly and adequately represent the interests of the Class as defined above. Plaintiff's attorneys are ready, willing, and able to fully and adequately represent the Class and Plaintiff. Plaintiff's attorneys are highly experienced in employment Class action litigation. Plaintiff intends to prosecute this action vigorously.

42. **Common Questions of Law and Fact.** There are predominant common questions and answers of law and fact and a community of interest amongst Plaintiff and the claims of the Class as follows:

    a. Whether Defendant misclassified Vuers as "independent contractors" instead

of employees (e.g., whether iVueit can meet its burden to meet each Prong of California's ABC test and/or its *Borello* test for employment status);

b. Whether Defendant failed to reimburse Vuers for reasonable business expenses;

c. Whether Defendant properly provided meal and rest breaks to Vuers;

d. Whether Defendant failed to pay Vuers for all hours worked, including non-productive time;

e. Whether Defendant failed to provide wage statements or accurate wage statements to Vuers.

f. Whether Defendant compensated Vuers separately for rest breaks;

g. Whether Defendant failed to properly pay Vuers overtime;

h. Whether Defendant failed to pay wages when due;

i. Whether Defendants failed to maintain required employee and payroll records for Vuers; and

j. Whether Defendant engaged in an unlawful, unfair, and/or fraudulent business practice or act in violation of Business and Professions Code, section 17200 *et seq.* as it relates to Vuers.

43. **Typicality.** Plaintiff's claims are typical of the claims of all members of the Class because Defendant applied and continues to apply its illegal classification and pay practices to all Vuers.

44. **Superiority of a Class Action.** A Class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is not practicable, and questions of law and fact common to the Class predominate over questions affecting only individual Class Members. Each Class Member has been damaged and is entitled to recovery due to Defendant's conduct described in this Complaint. A Class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judiciary. Plaintiff is unaware of any difficulties likely to be encountered in this action that would preclude its maintenance as a Class action.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Failure to Reimburse Expenses—**
**Lab. Code, § 2802 and applicable IWC Wage Orders**

45. Plaintiff incorporates by reference every allegation contained above.

46. Plaintiff brings this cause of action on behalf of herself and the Class.

47. The Class necessarily incurs many types of business expenses that Defendant does not reimburse. These expenses include cell phone and related data and voice plan expenses which are required to perform work. Defendant also requires Vuers to carry valid licensure and insurance for their motor vehicle but does not reimburse Vuers for their vehicle related expenses such as mileage, insurance, registration, and routine inspection/maintenance.

48. As alleged above, Plaintiff and the Class incurred business expenses while performing necessary work for Defendant. They were never reimbursed because they were uniformly misclassified as independent contractors.

49. The California Labor Code, section 2802, and applicable California Wage Orders require that employers reimburse employees for business expenses reasonably incurred. Defendant failed to do so.

50. Plaintiff and the Class have been damaged by Defendant's failures in this respect in an amount to be proven at trial.

51. Plaintiff and the Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on Defendant's violations.

**SECOND CAUSE OF ACTION**
**Failure to Provide Accurate Wage Statements—**
**Lab. Code, § 226 and applicable Wage Orders**

52. Plaintiff incorporates by reference every allegation contained above.

53. Plaintiff brings this cause of action on behalf of herself and the Class.

54. The purpose of Labor Code section 226 is to ensure that employees can determine whether they are being paid their wages in accordance with California law. Under Section 226(h), "[a]n employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorney's fees."

55. Defendant violated the above statute by, among other things, failing to provide accurate gross and net wages earned and hours worked on a paystub to Vuers.

56. Defendant's violations of section 226 and applicable Wage Orders are ongoing and will continue until and unless this Court enters an injunction barring such violations. Therefore, Plaintiff seeks damages and injunctive relief pursuant to Labor Code, section 226, subsections (e) and (g), along with penalties for past violations, including attorneys' fees and costs incurred.

**THIRD CAUSE OF ACTION**
**Failure to Compensate for All Hours Worked / Non-Productive Time—**
**Lab. Code, §§ 226.2, 1194, 1197, 1197.1 and applicable Wage Orders**

57. Plaintiff incorporates by reference every allegation contained above.

58. Plaintiff brings this cause of action on behalf of herself and the Class.

59. Because Vuers receive flat-rate compensation for each successfully completed Vue, they are "piece rate" employees. Piece rate compensation is work paid for according to the number of units turned out. It must be based upon an ascertainable figure paid for completing a task. *See* DLSE Manual, § 2.5.1. Time during which an employee is at work but not engaged in completing a piece rate task is called non-productive time. During non-productive time, piece rate earnings are "reduced because they [i.e., piece rate earnings] are precluded", thus "the employee must be paid at least the minimum wage (or contract hourly rate if one exists) for the [non-productive] time." *See id.,* § 47.1.

60. Pursuant to California Labor Code §§ 1194, 1197, 1197.1, 226.2, as well as applicable Wage Orders, Defendant must compensate Plaintiff and the Class for *all* hours worked, including all non-productive time and mandated rest periods. This is a separate obligation from paying piece rate compensation. California defines hours worked as the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work. Such time includes when an employee is "on call" and is not relieved of all duties and instead subject to requirements to timely respond or report to the employer.

61. Defendant does not separately compensate Plaintiff and the Class for each hour worked, including but not limited to for all non-productive time and mandated rest periods. The

1  uncompensated non-productive time here includes, but is not limited to, hours where Vuers are "on

2  call." Per iVueit's policies:

> During any period in which you have active but uncompleted assignments, you must be readily accessible to IVUEIT by voice or text message via the IVUEIT App at least between 8 a.m. and 9 p.m. in your time zone, and at all times while actively performing an assignment for IVUEIT.  You agree to respond to all communications from IVUEIT in a timely and expeditious manner.  Nothing in this provision prohibits you from completing work for any other business entity during these periods of time, IVUEIT only seeks clear lines of communication with you during the pendency of an assignment.

During these shifts when Vuers are not relieved of all duties and instead remain on call, iVueit fails to pay for non-productive time.

62.     Defendant's uncompensated on-call procedures robbed Plaintiff and the Class of hours worked in violation of California law.

63.     Defendants use of flat-rate pay also fails to compensate Vuers for overtime and minimum wage and other wage obligations when the time spent actually engaged in Vue activities, when compensated by required minimum wage or other appropriate wage rates, exceeds the amounts paid for Vues or when Defendants do not pay at all for Vue-related work where the Vue is not completed or not completed to Defendant's satisfaction.

64.     As a proximate result of Defendant's unlawful conduct, Plaintiff and the Class sustained damages and are entitled to recover unpaid minimum, regular, and overtime wages, non-productive time pay, reporting time pay, waiting time pay, on-call pay, liquidated damages, applicable penalties, attorneys' fees, and costs.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Overtime—**
**Lab. Code, § 510 and applicable Wage Orders**

65.     Plaintiff incorporates by reference every allegation contained above.

66.     Plaintiff brings this cause of action on behalf of herself and the Class.

67.     Labor Code, section 510, and applicable Wage Orders require overtime pay of at least 1.5 times an employee's regular rate of pay for all hours worked over 8 in a day or 40 in a week.

68.     Vuers, including Plaintiff, can and do work over 8 hours per day and over 40 hours per week in line with Defendant's expectations and standards as necessary to complete the work

assigned to them. Despite this, they receive no overtime pay in violation of California law.

69.     Defendant is liable to Plaintiff and the Class for unpaid overtime, interest, reasonable attorneys' fees and costs, and any related statutory penalties.

### FIFTH CAUSE OF ACTION
### Failure to Provide Meal Periods—
### Lab. Code §§ 226.7 and 512 and applicable Wage Orders

70.     Plaintiff incorporates by reference every allegation contained above.

71.     Plaintiff brings this cause of action on behalf of herself and the Class.

72.     Under Labor Code, sections 226.7 and 512, as well as applicable IWC Wage Orders, employers must provide a 30-minute uninterrupted, off-duty meal period for each work shift of more than 5 hours. Depending on hours worked, a second meal period may be owed as well. Where an adequate meal period is not provided, employees are entitled to one hour's compensation at their regular rate of pay.

73.     Defendant has no meal or rest policies and they do not record when breaks start or stop. Nor does Defendant provide for uninterrupted meal periods for Vuers or make any effort to relieve them of all duties.

74.     Despite their records reflecting that Vuers routinely do not take breaks, Defendant does not pay premium wages in lieu of these breaks as required by law. And Vuers have not otherwise waived their entitlement to meal breaks.

75.     As a proximate result of Defendant's unlawful conduct, Plaintiff and the Class sustained damages and are entitled to recover unpaid wages, liquidated damages, interest, applicable penalties, attorneys' fees, and costs.

### SIXTH CAUSE OF ACTION
### Failure to Provide Rest Breaks—
### Lab. Code, § 226.7 and applicable Wage Orders

76.     Plaintiff incorporates by reference every allegation contained above.

77.     Plaintiff brings this cause of action on behalf of herself and the Class.

78.      Pursuant to Labor Code, section 226.7 and 226.2, as well as applicable IWC Wage Orders, employers must provide a 10-minute uninterrupted, off-duty rest break for each work shift of 3.5 hours or more.  During these periods, an employer must relieve the employee of all duties and

relinquish all control over how an employee spends their time. Such rest breaks are to be paid separately from the piece rate pay Vuers receive. Where a rest break is not provided, employees are entitled to one hour's compensation at their regular rate of pay.

79. Defendant failed to provide for rest breaks or separately pay Vuers for rest breaks even if taken.

80. As a proximate result of Defendant's unlawful conduct, Plaintiff and the Class sustained damages and are entitled to recover unpaid wages, liquidated damages, interest, applicable penalties, attorneys' fees, and costs.

**SEVENTH CAUSE OF ACTION**
**Failure to Pay Wages When Due—**
**Lab. Code, §§ 201-204 and applicable Wage Orders**

81. Plaintiff incorporates by reference every allegation contained above.

82. Plaintiff brings this cause of action on behalf of herself and all members of the Class who are no longer working for Defendant.

83. Defendant failed to pay all wages due, including the above-mentioned missing wages that went unreimbursed and wages illegally deducted from earnings, upon separation of employment as required by Labor Code sections 201 through 203. As such, Plaintiff and other former Vuers in the Class are owed penalties in amount up to 30 days wages.

84. Defendants are also required to pay wages during employment within time periods set by Labor Code section 204 and other laws and Wage Orders. Defendants failed to pay wages due to Vuers while employed within the required time periods

84. Defendant's actions in this respect were willful within the meaning of Labor Code, section 203, entitling Plaintiff and the Class Members to recover waiting time penalties. Defendant failed to pay the above wages pursuant to its standard policies and procedures not to provide employment protections to Vuers. Defendant knows or should know Vuers are misclassified as independent contractors. Defendant is represented by sophisticated in-house and outside counsel with a deep understanding of California law who surely understand Defendant cannot meet its burden to prove Vuers are independent contractors.

85. Plaintiff and the Class Members are entitled to recover waiting time penalties and unpaid wages, as well as interest, applicable penalties, attorneys' fees, and costs.

**EIGHTH CAUSE OF ACTION**
**Failure to Keep Proper Employment Records and Payroll Records—**
**Lab. Code, § 1174 and applicable Wage Orders**

86. Plaintiff incorporates by reference every allegation contained above.

87. Defendants failed to record and maintain proper employment records and payroll records, including but not limited to time sheets, for Vuers in violation of Labor Code section 1174 and other applicable statutory and Wage Order provisions.

88. Plaintiff and Class Members are entitled as a result to penalties, attorneys' fees, costs and other relief.

**NINTH CAUSE OF ACTION**
**Unfair Business Practices—**
**Bus. & Prof. Code, § 17200 et seq.**

89. Plaintiff incorporates by reference every allegation contained above.

90. Defendant knowingly and willfully engaged in the unlawful practices described herein, which include but are not limited to:

   a. Intentionally misclassifying its employee Vuers as "independent contractors;"
   b. Imposing unreimbursed business expenses on misclassified employees;
   c. Failing to pay overtime to Vuer employees;
   d. Failing to pay Vuers for each hour worked, including but not limited to minimum and regular wages and failing to pay non-productive time pay, waiting time pay, on-call pay, reporting time pay, paid rest break and other wages;
   e. Failing to provide adequate meal and rest breaks to Vuers or to pay for non-compliant meal and rest breaks;
   f. Failing to pay wages when due during employment and at end of employment;
   g. Failing to provide accurate pay statements to Vuers;
   h. Unlawful deductions;
   i. Requiring workers to agree to terms in writing known to be prohibited by law;

    j. Requiring workers to work longer than the maximum hours and violative of standard conditions of labor fixed by the Industrial Welfare Commission; and

    k. Failing to maintain required employee and payroll records.

91. Defendant intended to, and did, profit from these illegal acts.

92. As a direct and proximate result of the above, Plaintiff and the Class Members have lost money or property, thereby entitling these individuals to restitution.

93. Pursuant to the Business and Professions Code, Plaintiff and the Class Members are entitled to restitution of money or property acquired by Defendant by means of such unlawful business practices, in amounts not yet known, but to be ascertained at trial.

94. Pursuant to the Business and Professions Code, the Class and the public are also entitled to injunctive relief against Defendant's ongoing continuation of such unlawful business practices, including public injunctive relief. Plaintiffs seek such public injunctive relief here prohibiting Defendant from continuing its illegal practice of misclassifying Vuers, including Plaintiff and the Class, and denying them of important wage laws.

95. If Defendant is not enjoined from engaging in the unlawful business practices described above, Plaintiff, Class Members, and the public will be irreparably injured. The exact extent, nature, and amount of such injury is difficult to ascertain now.

96. The Class, including Plaintiff, have no plain, speedy, and adequate remedy at law.

97. Defendant will continue to engage in the unlawful business practices described above in violation of the Business and Professions Code, in derogation of the rights of Plaintiff, the Class, and of the public, if not enjoined by this Court.

98. The success of Plaintiff in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the public.

99. Private enforcement of these rights is necessary as no public agency has pursued enforcement. There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Plaintiffs are therefore entitled to an award of attorneys' fees and costs of suit under the "common fund," "substantial benefit," and other important doctrines.

100. The success of Plaintiff in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the public.

### TENTH CAUSE OF ACTION
### Violation of PAGA; Enforcement of PAGA—
### Lab. Code, § 2698 et seq.

101. Plaintiff incorporates by reference every allegation contained above.

102. PAGA permits aggrieved employees, like Plaintiff, to recover civil penalties for violations of numerous Labor Code sections. *See* Labor Code § 2699.5. Plaintiff seeks to recover representative PAGA penalties stemming from Defendant's Labor Code violations occurring to others (*i.e.*, non-individual PAGA penalties) as enumerated above and below occurring during the relevant PAGA period (one year prior to their PAGA letter to the LWDA plus any applicable tolling). By misclassifying Vuers (or similarly titled individuals) as independent contractors over this period, Defendant willfully misclassified them and failed to comply with various Labor Code provisions.

103. Defendant's conduct, as alleged above, violates numerous sections of the California Labor Code, including, but not limited to, the following:

    a. Labor Code sections 200 *et seq.*, 201-, 203, 204, 210, 216, 218.5, 218.6, 221, 223, 224, and 225.5for failure to timely pay Plaintiff and other aggrieved employees all earned wages;

    b. Labor Code sections 223, 226.2, 1194, 1194.2, 1197, 1197.1, and 1199 for failure to pay Plaintiff and other aggrieved employees all mandatory minimum wages for all hours worked, including non-productive time;

    c. Labor Code sections 510, 558, and 1198, for failure to compensate Plaintiff and other aggrieved employees with all required overtime pay;

    d. Labor Code sections 226 and 226.3, for failure to provide accurate wage statements to Plaintiff and other aggrieved employees;

    e. Labor Code sections 226.2, 226.7, 512, and 558 for failure to provide meal periods and rest periods to Plaintiff and other aggrieved employees;

    f. Labor Code section 226.8, for willful misclassification of Plaintiff and other aggrieved employees;

  g. Labor Code section 432.5, for requiring Plaintiff and other aggrieved employees to agree to terms in writing known to be prohibited by law, including the agreement between Plaintiff and other aggrieved employees and Defendant that allows failure to reimburse Plaintiffs and other aggrieved employees for business expenses reasonably incurred;

  h. Labor Code section 1174, for failure to maintain accurate employment and payroll records related to Plaintiff and other aggrieved employees' work;

  i. Labor Code section 1194.5, for Defendant's violations as described herein;

  j. Labor Code sections 1198 and 1199, for Defendant's employment of Plaintiff and other aggrieved employees for longer than the maximum hours and violative of the standard conditions of labor fixed by the Industrial Welfare Commission; and

  k. Labor Code section 2802, for failure to reimburse employees for business expenses reasonably incurred.

  l. Generally Labor Code sections 200 *et seq.*, 201-203, 204, 210, 216, 218.5, 218.6, 221, 223, 224, 225.5, 226, 226.2, 226.3, 226.7, 226.8, 400 *et seq.,* 402, 404, 405, 408, 432.5, 450, 510, 512, 558, 1174, 1194, 1194.2, 1194.5, 1197, 1197.1, 1198, 1199, 2775, 2800, 2802, and 2804, California Business & Profession Code section 17200 *et seq.,* California Code of Regulations section 11040 *et seq.,* and applicable Industrial Welfare Commission Wage Orders in connections with the various misconduct alleged.

104. Plaintiff has complied with all administrative requirements and pre-conditions contained with California Labor Code Section 2699.3. As to the initial Complaint, Plaintiff notified the California Labor Workforce Development Agency ("LWDA") on January 11, 2024, and waited the prescribed period. As to this First Amended Complaint, Plaintiff notified the LWDA on February 14, 2025, and waited the prescribed period. Plaintiff has not received any response from the LWDA to either the initial notice or amended notice.

105. Pursuant to PAGA and California Labor Code sections 2699, 2699.3, and 2699.5, Plaintiff is entitled to and hereby seeks civil penalties against iVueit, in addition to reasonable

attorneys' fees and costs, on behalf of herself and all others similarly-aggrieved current and former employees for violations of the Labor Code sections referred to in this Complaint.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendant, as follows:

1. For an order certifying the Class as described herein, appointing Plaintiff as Class Representative, and their counsel as Class Counsel;
2. For compensatory damages according to proof;
3. For enhanced damages, liquidated damages, and penalties as permitted under prevailing law;
4. For civil penalties according to proof;
5. For pre-judgment and post-judgment interest where allowable;
6. For costs of suit;
7. For injunctive relief, including public injunctive relief, as described herein;
8. For restitution as described herein;
9. For punitive damages, where appropriate;
10. For reasonable attorneys' fees and costs; and
11. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted:
Dated: May 22, 2025                         **NICHOLAS & TOMASEVIC, LLP**

By:   /s/ Shaun Markley
      Craig M. Nicholas (SBN 178444)
      Shaun Markley (SBN 291785)
      Jake W. Schulte (SBN 293777)
      225 Broadway, 19th Floor
      San Diego, CA 92101
      Tel: (619) 325-0492
      Fax : (619) 325-0496
      Email: cnicholas@nicholaslaw.org
      Email: smarkley@nicholaslaw.org
      Email: jschulte@nicholaslaw.org

      Attorneys for Plaintiff ALICE WILBURG, an individual, on behalf of herself and all others similarly situated