**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jake Schulte (SBN 293777)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jschulte@nicholaslaw.org

Attorneys for Plaintiff,
ALICE WILBURG

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE WILBURG, an individual, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>IVUEIT, an Ohio limited liability company; and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No. 3:24-cv-02642-AMO<br><br>**PLAINTIFF ALICE WILBURG'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date**: August 7, 2025<br>**Time**: 2:00 p.m.<br>**Courtroom**: 10<br><br>**Judge**: Hon. Araceli Martínez-Olguín<br><br>**Case Removed**: April 26, 2024<br>**Trial Date**: Not Set |

1    **TO THE COURT AND TO ALL PARTIES AND COUNSEL OF RECORD:**

2    **PLEASE TAKE NOTICE** that on August 7, 2025 at 2:00 p.m., or as soon thereafter as

3    the matter may be heard in Courtroom 10 before the Honorable Araceli Martínez-Olguín, located

4    at the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff

5    Alice Wilburg ("Plaintiff") will, and hereby does, move for an order granting preliminary approval

6    of the parties' class action and PAGA representative settlement, and approving the form and

7    manner of giving notice to the proposed class of the proposed settlement.

8    Specifically, Plaintiff respectfully requests that the Court: (1) grant preliminary approval

9    of the proposed Settlement; (2) approve the form, content and method of distribution of the Notice

10   of Class Action Settlement; (3) appoint CPT Group as the Settlement Administrator; (4) approve

11   the PAGA settlement and PAGA payment to the California Labor and Workforce Development

12   Agency; (5) certify the proposed class for settlement purposes; and (6) schedule a hearing

13   regarding final approval of the proposed Settlement and the request for attorneys' fees, costs, and

14   enhancement award payment.

15   Plaintiff's unopposed Motion is brought on the grounds that the settlement reached in this

16   proposed class action meets the requirements of Rule 23(e) of the Federal Rules of Civil Procedure,

17   and is fair, reasonable and adequate, and should therefore be preliminarily approved.

18   This Motion is made upon this Notice, the accompanying Memorandum of Points and

19   Authorities, the supporting Declarations of Shaun Markley, Alice Wilburg,  Kevin Gaut, and Julie

20   Green, and any exhibits attached thereto, all other pleadings and papers on file in this action, and

21   upon such evidence and arguments as may be presented at the hearing that the Court deems

22   appropriate.

23   Respectfully submitted:

24   Dated:  May 23, 2025                    **NICHOLAS & TOMASEVIC, LLP**

25                                  By:    */s/ Shaun Markley*
                                         Craig M. Nicholas (SBN 178444)
26                                       Shaun Markley (SBN 291785)
                                         Jake Schulte (SBN 293777)
27                                       225 Broadway, 19th Floor
                                         San Diego, California 92101
28                                       Tel: (619) 325-0492

1

Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jschulte@nicholaslaw.org

Attorneys for Plaintiff ALICE WILBURG

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF ALICE WILBURG'S NOTICE OF MOTION AND
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL BACKGROUND ...................................................................... 1

III.    PAGA COMPLIANCE ........................................................................................ 3

IV.     CAFA COMPLIANCE ........................................................................................ 3

V.      TERMS OF THE PROPOSED SETTLEMENT ............................................. 3

        A.      The Settlement Class ................................................................................. 3

        B.      Relief to the Settlement Class ................................................................. 4

        C.      Settlement Notice and Exclusion Procedures ...................................... 5

        D.      Release of Claims ....................................................................................... 7

        E.      Enhancement Award, Attorneys' Fees and Costs, and
                Administration ........................................................................................... 7

        F.      Timing of Settlement Payments .............................................................. 7

VI.     ARGUMENT ........................................................................................................ 8

        A.      Preliminary Approval of the Settlement is Appropriate .................... 8

                1.      The Settlement is the Product of Informed, Non-Collusive
                        Negotiation ...................................................................................... 8

                2.      The Settlement Falls Within the Range of Possible
                        Approval ........................................................................................... 9

                        a.      The Strength of Plaintiff's Case and the Risk of
                                Further Litigation Support Preliminary Approval .......... 9

                        b.      The Settlement Consideration and Allocation Are
                                Fair .......................................................................................... 10

                3.      The Attorneys' Fees and Costs Requests Are Reasonable ...... 13

                4.      The PAGA Settlement Is Reasonable and Should Be
                        Approved .......................................................................................... 13

                5.      The Proposed Enhancement Award is Reasonable ................... 14

                6.      The Court Should Appoint CPT Group as Settlement
                        Administrator .................................................................................. 15

**B.** **The Proposed Notice is Adequate** ...................................................................... 16

**C.** **Conditional Class Certification Is Warranted** ................................................... 16

  *1.* *Conditional Class Certification is Warranted Under Rule 23(a)* ......................................................................................... 17

    a. The Class is Sufficiently Numerous ............................................. 17

    b. Significant Common Questions May Be Answered by Common Proof ........................................................................ 17

    c. Plaintiff's Claims Are Typical ...................................................... 17

    d. Plaintiff is an Adequate Representative ........................................ 18

  *2.* *Conditional Class Certification is Also Warranted Under Rule 23(b)(3)* .............................................................................. 18

    a. Common Questions Predominate Over Individual Questions ..................................................................................... 18

    b. A Class Action is Superior to Multiple Individual Actions ......................................................................................... 19

**D.** **The Court Should Set a Final Approval Hearing** ............................................. 19

**VII.** **CONCLUSION** ........................................................................................................ 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Alvarez v. Farmers Ins. Exch.*,

4
   2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ..............................................16

5

*Chu v. Wells Fargo Investments, LLC*,
   2011 WL 672645 (N.D. Cal. Feb. 16, 2011)..............................................15

6

*Churchill Vill., L.L.C. v. Gen. Elec.*,

7
   361 F.3d 566 (9th Cir. 2004)..............................................17

8

*Cicero v. DirecTV, Inc.*,

9
   2010 WL 2991486 (C.D. Cal. July 27, 2010) ..............................................13

10

*Doninger v. Pac. Nw. Bell, Inc.*,
   564 F.2d 1304 (9th Cir. 1977)..............................................18

11

*Hanlon v. Chrysler Corp.*,

12
   150 F.3d 1011 (9th Cir. 1998)..............................................20, 21

13

*Hanon v. Dataproducts Corp.*,

14
   976 F.2d 497 (9th Cir. 1992)..............................................19

15

*In re Immune Response Sec. Litig.*,

16
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..............................................9

17

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)..............................................11

18

*In re Pac. Enterprises Sec. Litig.*,

19
   47 F.3d 373 (9th Cir. 1995)..............................................14

20

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013)..............................................20

21

*Ludlow v. Flowers Foods, Inc.*,

22
   2022 WL 2441295 (S.D. Cal. July 5, 2022)..............................................19

23

*Mazza v. Am. Honda Motor Co.*,

24
   666 F.3d 581 (9th Cir. 2012)..............................................19

25

*Misra v. Decision One Mortg. Co.*,
   2009 WL 4581276 (C.D. Cal. Apr. 13, 2009)..............................................17

26

*Negrete v. Allianz Life Ins. Co. of N. Am.*,

27
   238 F.R.D. 482 (C.D. Cal. 2006) ..............................................20

28

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. Of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................8, 9

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) ................................................................................21

*Ramirez v. Benito Valley Farms, LLC*,
    2017 WL 3670794 (N.D. Cal. Aug. 27, 2017) .....................................................15

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .............................................................................19

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...........................................................................8, 15

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
    2019 WL 1940619 (C.D. Cal. Mar. 27, 2019) .....................................................20

*Singer v. Becton Dickinson Co.*,
    2009 WL 4809646 (S.D. Cal. 2009) ......................................................................8

*Smith v. Cardinal Logistics Mgmt. Corp.*,
    2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) .......................................................19

*Smith v. CRST Van Expedited, Inc.*,
    2013 WL 163293 (S.D. Cal. Jan. 14, 2013) .........................................................15

*State of California v. eBay, Inc.*,
    2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ........................................................8

*Sypherd v. Lazy Dog Restaurants, LLC*,
    2023 WL 1931319 (C.D. Cal. Feb. 10, 2023) .......................................................14

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ...............................................................................18

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................15

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ..................................................................9

*Villegas v. J.P. Morgan Chase & Co.*,
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................................................11, 17

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .............................................................................14

*Wal–Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................18, 20

**STATUTES**

28 U.S.C. § 1715 ..........................................................................................................................3

Cal. Lab. Code, § 2699 ............................................................................................................3, 14

**RULES**

Fed. R. Civ. P. 23 ...........................................................................................................8, 17, 20, 21

**TREATISES**

4 Newberg on Class Actions, § 11:6 (5th ed. 2014)...................................................................19

I.    **INTRODUCTION**

Plaintiff Alice Wilburg ("Plaintiff") seeks preliminary approval of a proposed class action and PAGA representative action settlement on behalf of herself and approximately 4,000 other current and former gig workers of Defendant iVueit, LLC ("Defendant" or "iVueit").[1]  Plaintiff and members of the Class were paid for performing at least one Vue (i.e., property inspection, site photograph services, and/or other iVueit-related work) in California during the Class Period. Plaintiff alleges that she and her fellow Vuers were misclassified as "independent contractors," and as a result are owed additional monies under California employment law.

The Settlement is a result of extensive arms-length negotiations that secures meaningful relief for the Class.  The Settlement provides for a gross settlement value of $635,000 ("Gross Settlement Fund").  The net, or "take home," value of the settlement for each member of the proposed settlement class ("Settlement Class Member") is a guaranteed minimum of $15 that escalates based on several factors, including: (1) the number of Vues completed during the Class Period; and (2) whether the individual is an aggrieved employee entitled to a portion of the Private Attorneys General Act (PAGA) allocation of the Settlement ("PAGA Worker Payment").  The Settlement is a "non-claims made" and non-revisionary settlement that does not require the submission of a claims form by Settlement Class Members.

Plaintiff submits that the proposed Settlement is a fair and adequate result in light of relatively minimal amount of work performed by the Settlement Class Members and the risks of proceeding further with the case.  Accordingly, Plaintiff respectfully requests that the Court grant the motion for preliminary approval and enter the [Proposed] Order Granting Preliminary Approval of Settlement submitted herewith.

II.    **PROCEDURAL BACKGROUND**

On March 21, 2024, Plaintiff filed a class and representative action complaint in Alameda Superior Court against Defendant, which was removed to the United States District Court,

---

[1] Unless otherwise specified, all capitalized terms in this Memorandum of Points and Authorities have the same definitions set forth in the Class and PAGA Action Settlement Agreement and Release (the "Settlement") attached to the Declaration of Shaun Markley ("Markley Dec.") as Exhibit 1.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   Northern District of California on May 2, 2024.  Dkt. 1.  Plaintiff sought claims for: (1) Failure to

2   Reimburse Business Expenses under Labor Code section 2802; (2) Failure to Provide Accurate

3   Wage Statements under Labor Code section 226; (3) Failure to Compensate for All Hours Worked

4   under Labor Code sections 226.2, 1194, 1197, 1197.1; (4) Failure to Pay Overtime under Labor

5   Code section 510; (5) Failure to Provide Meal Periods under Labor Code section 226.7; (6) Failure

6   to Provide Rest Breaks under Labor Code section 226.7; (7) Failure to Pay Wages When Due

7   under Labor Code sections 201-203; (8) Unfair Business Practices under Business and Professions

8   Code section 17200, *et seq.*; and for (9) Civil Penalties under PAGA under Labor Code section

9   2698 *et seq.*  Dkt. 1-2.  Defendant timely answered the class and representative action complaint

10  on May 2, 2024.  Dkt. 1-14.

11      On August 1, 2024, Defendant filed a motion to compel arbitration and stay proceedings.

12  Dkt. 18.  On August 15, 2024, Plaintiff filed her opposition.  Dkt. 19.  The motion to compel

13  arbitration was originally set for hearing on November 14, 2024.  Dkt. 15.  The Court continued

14  the hearing until December 19, 2024.  Dkt. 21.  On November 27, 2024, the Parties filed a joint

15  administrative motion to continue the December 19, 2024, hearing until after the completion of a

16  mediation.  Dkt. 23.  On December 2, 2024, the Court granted the Parties' request to continue the

17  hearing date on Defendant's motion to compel arbitration to February 6, 2025, and stay the action

18  pending mediation.  Dkt. 24.

19      On January 7, 2025, the Parties attended a full-day mediation with Scott Markus, Esq., an

20  experienced and respected mediator for complex employment matters including class actions.

21  Shortly after the mediation, the Parties reached a settlement in principle and signed a Memorandum

22  of Understanding documenting the settlement framework.  Markley Dec., ¶ 2.  On January 14,

23  2025, the Parties alerted the Court that the case had settled.  Dkt. 27.  On May 22, 2025, the Parties

24  executed/memorialized the terms of the settlement in a Class and PAGA Action Settlement

25  Agreement and Release.  Markley Dec., ¶ 3, Ex. 1 (Settlement).

26      On March 6, 2025, the Parties informed the Court of their intention to stipulate to permit

27  Plaintiff to file a First Amended Complaint ("FAC") to include claims outlined in an amended

28  PAGA notice that are also covered by the Settlement.  Dkt. 29.  The FAC also includes one

1  additional cause of action: Failure to Keep Proper Employment/Payroll Records under Labor Code

2  section 1174.  Dkt. 33, Ex. A (showing redlined changes).  On May 19, 2025, the Parties filed a

3  stipulation permitting Plaintiff leave to file the FAC.  Dkt. 33.  On May 20, 2025, the Court granted

4  the Parties' stipulation.  Dkt. 34.  On May 22, 2025, Plaintiff filed the FAC, which is the operative

5  complaint for purposes of this Settlement.  Dkt. 35.

6  **III.   PAGA COMPLIANCE**

7         Plaintiff has complied with all administrative requirements and pre-conditions contained

8  within Labor Code section 2699.3.  As to the initial Complaint, Class Counsel sent a PAGA notice

9  letter to Defendant and the Labor Workforce Development Agency ("LWDA") on January 11,

10  2024.  Markley Dec., ¶ 4, Ex. 2.  As to the FAC, Class Counsel sent an amended PAGA notice

11  letter to Defendant and the LWDA on February 14, 2025.  *Id*., ¶ 5, Ex. 3.  Other than the automatic

12  email reply confirming receipt of the PAGA notice letters, Class Counsel did not receive a response

13  from the LWDA.  For both the filing of the initial Complaint and the FAC, Plaintiff waited the

14  prescribed period for the LWDA to respond. *Id*., ¶ 5.  Class Counsel will serve the LWDA with a

15  copy of the Settlement and these approval papers contemporaneously with the filing of this motion.

16  *Id*., ¶ 6; Cal. Lab. Code, § 2699(L)(2) ("The proposed settlement shall be submitted to the agency

17  [LWDA] at the same time it is submitted to the court.").

18  **IV.   CAFA COMPLIANCE**

19         Within 10 days of the filing of this preliminary approval motion, Defendant's counsel will

20  serve the appropriate state official(s) with a copy of the Settlement and all other required materials

21  and information provided under 28 U.S.C. § 1715.  Gaut Dec., ¶ 3.

22  **V.   TERMS OF THE PROPOSED SETTLEMENT**

23         The complete details of the Settlement are contained in the long-form agreement signed by

24  the Parties and attached as Exhibit 1 to the Markley Dec.  The following summarizes the

25  Settlement's key terms.

26         **A.   The Settlement Class**

27         The Class is defined as all persons paid for property inspection, site photograph services

28  work, and/or other Vue-related work in California at any time during the Class Period that was

---

3                                    3:24-cv-02642-AMO

sourced through the iVueit App.  Settlement, ¶ 26.  The Class Period encompasses March 21, 2020 [i.e., 4 years prior to filing of the initial Complaint] through the date the Court enters its Order preliminarily approving the Settlement.  *Id.*, ¶ 29.  The Settlement Class includes all Class Members who have not timely and properly excluded themselves from the Settlement.  *Id.*, ¶¶ 70-71.

### B.    Relief to the Settlement Class

The Settlement provides that iVueit will pay a non-revisionary gross settlement amount of $635,000 (the "Gross Settlement Fund").  The Gross Settlement Fund is an "all in" number that includes all monetary benefits and payments to the Settlement Class (the "Net Settlement Fund"), the PAGA Payment to the LWDA and PAGA Workers [$50,000], Class Counsel's attorneys' fees [$158,750 or 25% of the Gross Settlement Fund] and costs [up to $17,500], Settlement Administrative Expenses [$25,000], and the Enhancement Award to Plaintiff [$10,000]. Settlement, ¶¶ 78-82.[2]  Assuming the Court were to approve the above allocation, the Net Settlement Fund would total $373,750 for Individual Settlement Payments.

Each Class Member will be eligible to receive a portion of the Net Settlement Fund based on the following formula:

- Each Settlement Class Member will receive at least a "Minimum Class Settlement Payment" in the amount of $15 as their Individual Settlement Payment.

- Each Individual Settlement Payment shall be the sum of the Settlement Class Member's Minimum Settlement Payment and the outcome of the following calculation: (1) subtract the sum of all Minimum Class Settlement Payments to the Settlement Class Members from the Net Settlement Fund ("Remaining Net Settlement Fund"); (2) the Remaining Net Settlement Fund shall be divided by the total Vues completed in California during the Class Period by all Settlement Members; and (3) the resulting fraction from (2) shall be multiplied by the

---

[2] Class Counsel only plan to seek 25% of the Gross Settlement Fund notwithstanding the Settlement permitting up to 33% recovery.  Similarly, Plaintiff only plans to seek a $10,000 Enhancement Award notwithstanding the Settlement permitting up to $15,000. Markley Dec., ¶ 7.

Settlement Class Member's total number of completed Vues in California during the Class Period.

Settlement, ¶ 90.   In other words, class members will receive a pro rata share of the settlement money based on the amount they worked for iVueit with a $15 minimum or floor.

The Settlement also resolves Plaintiff's PAGA claim filed on behalf of the State of California.  In settlement of that claim, and in exchange for a release, the LWDA will receive a payment of $37,500 for its 75% share of civil penalties and aggrieved PAGA Workers within the PAGA limitations period will receive a pro rata share of $12,500, based on the total Vues completed, for a total PAGA settlement share of $50,000.  Settlement, ¶¶ 81, 91.

Each PAGA Worker will be eligible to receive a portion of the PAGA settlement share based on the following formula:

- Each PAGA Worker will receive at least a "Minimum PAGA Settlement Payment" in the amount of $2.00 as their PAGA Worker Payment.

- Each PAGA Worker Payment shall be the sum of the PAGA Worker's Minimum PAGA Settlement Payment and the outcome of the following calculation: (1) subtract the sum of all Minimum PAGA Settlement Payments to the PAGA Workers from the portion of the PAGA Payment allocated to PAGA Workers ("Remaining PAGA Settlement Fund"); (2) the Remaining PAGA Settlement Fund shall be divided by the total Vues completed in California during the PAGA Period by all PAGA Workers; and (3) the resulting fraction from (2) shall be multiplied by the PAGA Worker's total number of completed Vues in California during the PAGA Period.

Settlement, ¶ 91.

### C.    Settlement Notice and Exclusion Procedures

The proposed notice plan will provide Settlement Class Members with sufficient information to make an informed decision about how and whether to participate in the proposed Settlement, object to the proposed Settlement, or exclude themselves from the Settlement Class. *See* Settlement, Ex. B (Notice of PAGA and Class Action Settlement).

Within twenty-one (21) days of entry of the Court's Preliminary Approval Order, Defendant will supply the Settlement Administrator with records containing Class Member/PAGA Worker contact information, as well as the total number of Vues completed in California by the Class Member/PAGA Worker during the Class Period/PAGA Period. Defendant will obtain some of the Class Member/PAGA Worker contact information by subpoenaing PayPal, the site which processes payments for Vuers. Settlement, ¶ 92.

Within thirty (30) days of receipt of Defendant's information outlined above, the Settlement Administrator will send Notices of PAGA and Class Action Settlement via (a) first-class U.S. Mail for each Class Member/PAGA Worker whose physical address is known; or (b) email or text for each Class Member/PAGA Worker whose physical address is not known. Settlement, ¶ 94. The Settlement Administrator will calculate the estimated Individual Settlement Payment/PAGA Settlement Check for every Class Member/PAGA Worker, which will be included in each individualized Notice of PAGA and Class Action Settlement sent to that Class Member/PAGA Worker. *Id.*, ¶ 93.

The Settlement Administrator will re-mail any Notice of PAGA and Class Action Settlement returned by the Post Office with a forwarding address. The Settlement Administrator will conduct one additional search/check via an appropriate skip tracing search for any Notice returned by the Post Office as "undeliverable" and take other reasonable steps to update any email or text notice returned as undeliverable. If an updated address, mobile number, or email address is found, the Settlement Administrator will promptly re-send the Notice to the updated address. *Id.*, ¶ 95. For purposes of obtaining final approval, Class Counsel will provide the Court a declaration from the Settlement Administrator outlining the results of the notice regimen to Class Members/PAGA Workers. *Id.*, ¶ 96.

Within forty-five (45) days from the initial mailing of the Notices of PAGA and Class Action Settlement (the "Notice Period"), Class Members may: (a) exclude themselves by submitting an Opt-Out Request to the Settlement Administrator; or (b) object to the Settlement by submitting a written notice of objection to the Court. An Opt-Out Request must be returned to the Settlement Administrator with a postmark dated during the Notice Period to be valid and effective.

1    An objection must be filed with the Court during the Notice Period to be considered.  Settlement,

2    ¶¶ 44, 48, 101-102; and *see id.* at Ex. B.

3        **D.    Release of Claims**

4        Class Members who do not opt out of the Settlement will release all past and present claims

5    or causes of action pleaded, or which could have been pled, arising, in whole or in part, from the

6    facts, claims, and/or allegations contained in the PAGA Notice, the Amended PAGA Notice, the

7    Complaint, and/or the First Amended Complaint against Defendant and other Released Parties that

8    arose during the Class Period (the "Released Claims").  This includes the PAGA claims in

9    exchange for PAGA penalties under the Settlement.  Plaintiff Wilburg (the named plaintiff) further

10   agrees to a general release of claims.  Settlement, § VII.

11       **E.    Enhancement Award, Attorneys' Fees and Costs, and Administration**

12       The following sums will be deducted from the Gross Settlement Fund if approved by the

13   Court at the final approval phase: (1) Enhancement Award to Plaintiff not to exceed $10,000; (2)

14   the Settlement Administration Expenses not to exceed $25,000; (3) Class Counsel's attorneys' fees

15   of up to 25% of the Gross Settlement Fund or $158,750; (4) Class Counsel's litigation costs not to

16   exceed $17,500; and (5) payment of $50,000 to resolve the PAGA claims – $37,500 of which will

17   go to the LWDA and $12,500 of which will be distributed among the PAGA Workers.  Settlement,

18   ¶¶ 78-82; Markley Dec., ¶ 7.

19       **F.    Timing of Settlement Payments**

20       Within thirty (30) days of the Effective Date, Defendant shall transfer the Gross Settlement

21   Fund to an account established by the Settlement Administrator.  The payments set forth in this

22   Settlement, including all Individual Settlement Payments, PAGA Worker Payments, the

23   Enhancement Award, Class Counsel's attorneys' fees and costs, etc. will be distributed by the

24   Settlement Administrator no later than sixty (60) days after the Effective Date.  The Effective Date

25   means the date the Court's Final Approval Order and Judgment becomes "Final."  The Effective

26   Date cannot occur (i.e., become Final) unless and until there is no possibility of an appeal or further

27   appeal that could potentially prevent this Settlement from becoming final and binding.  Settlement,

28   ¶¶ 34, 37, 84, 104-106.

1  **VI.   ARGUMENT**

2     **A.     Preliminary Approval of the Settlement is Appropriate**

3        In class action litigation, a court must approve the dismissal or compromise of the action.

4  Fed. R. Civ. P. 23(e). This involves a two-step process in which (1) the Court determines whether

5  a proposed class action settlement has the potential to be fair, adequate and reasonable, and (2)

6  after notice is sent to proposed Settlement Class Members who have a chance to react and weigh

7  in on the proposed settlement, whether the settlement merits final approval. *See State of California*

8  *v. eBay, Inc.*, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014). A full fairness analysis is

9  unnecessary at the preliminary approval stage. *Singer v. Becton Dickinson Co.*, 2009 WL 4809646,

10 at *7 (S.D. Cal. 2009). "Rather . . . the Court need only review the parties' proposed settlement to

11 determine whether it is within the permissible 'range of possible judicial approval' and thus,

12 whether the notice to the class and the scheduling of the formal fairness hearing is appropriate."

13 *Id.* (citations omitted).

14        The Ninth Circuit has identified eight non-exclusive factors that may be considered during

15 the approval process. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).

16 Approval of a class action settlement rests in the sound discretion of the court, which should apply

17 its discretion considering the judicial policy favoring settlement of complex class litigation. *See*,

18 *e.g.*, *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. Of San Francisco*, 688 F.2d 615, 625

19 (9th Cir. 1982).

20        Application of the relevant factors supports preliminary approval.

21            *1.     The Settlement is the Product of Informed, Non-Collusive Negotiation*

22        In this case, the Settlement is the result of arm's-length negotiations involving experienced

23 employment counsel who are well-versed in the applicable substantive law, class action and PAGA

24 litigation procedures, and the legal and factual issues of this case.  Markley Dec., ¶¶ 8-17 (outlining

25 Class Counsel's experience) and ¶¶ 2-3 (discussing settlement process). Throughout this litigation,

26 the Parties have engaged in extensive discussions about the respective strengths and weaknesses

27 of their claims and defenses, including the key arbitration issue which was fully briefed before the

28 Court when the Parties reached settlement.  The Parties also attended a full-day mediation session

1  with an experienced and neutral mediator where this Settlement was reached. *Id.,* ¶ 2. "[S]uch

2  negotiations are highly indicative of [the] fairness" of the proposed Settlement. *See In re Immune*

3  *Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

4           *2.*     *The Settlement Falls Within the Range of Possible Approval*

5        In deciding whether the proposed settlement is adequate and falls within the range of

6  possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the

7  value of the settlement offer," taking into account the risks of continuing litigation. *See Vasquez*

8  *v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (internal quotations

9  and citations omitted). Courts should recognize that "the agreement reached normally embodies a

10  compromise; in exchange for the saving of cost and elimination of risk, the parties each gave up

11  something they might have won had they proceeded with litigation." *Officers for Just.*, 688 F.2d

12  at 624 (internal quotations and citation omitted).  Here, the Settlement is fair, adequate, and within

13  the range of possible approval.

14           a.    <u>The Strength of Plaintiff's Case and the Risk of Further Litigation</u>

15                    <u>Support Preliminary Approval</u>

16        Plaintiff's primary contention is that iVueit classified its Vuers as independent contractors

17  while reserving and exercising levels of control consistent with an employment rather than

18  independent contractor relationship. Plaintiff further alleges that, as a result of this

19  misclassification, Plaintiff and Class Members are owed compensation for various benefits of

20  employment that iVueit neglected to pay them. Plaintiff intended to litigate these claims as a class

21  and representative action despite the arbitration clause in Defendant's terms and conditions that

22  Vuers like her agree to when signing up with the company.

23        While Plaintiff believes that she had a fair shot to beat the arbitration clause and maintain

24  class claims as well as her individual and representative PAGA claims, winning these motions can

25  be an uphill battle and carries much risk especially given that even if Defendant lost on arbitration

26  in this Court, it could immediately appeal forcing Plaintiff to have to win on the issues twice to

27  proceed with her claims. Losing at either the trial or appellate level on arbitration would leave little

28  if any claims to pursue in this Court. The uncertainty about the scope of claims that would survive

1  Defendant's arbitration motion was a major consideration in reaching agreement on the amount of

2  the settlement.

3          On the merits of her employment claims, although Plaintiff believes that the documents

4  that were to be produced in discovery and information revealed during depositions would have

5  supported her allegations, a finder of fact could conclude that Vuers were properly classified as

6  independent contractors, thereby dooming all claims at issue.  There is also a chance that the Court

7  would find that there were not sufficiently common or predominate issues regarding whether Vuers

8  were misclassified and deny class certification. Defendant was prepared to litigate that its gig

9  workers are classic independent contractors who meet all the California criteria for that status.

10          Further still, even if its Vuers were misclassified, Defendant was prepared to attack Class's

11  damages because, according to iVueit, Vuers earn much more than any required minimum or

12  overtime wage rate, and generally do not work enough hours in a day to trigger any meal or rest

13  period requirements given the limited task-based type of gig work at issue which could sometimes

14  be completed in just minutes. Without conceding that any adverse conclusions would be correct

15  or appropriate, Plaintiff and Class Counsel recognize the risk of possible negative outcomes.

16          Furthermore, even if Plaintiff established liability, the Class faced risks proving damages

17  classwide at trial with competent classwide evidence – and there is always a risk that the jury will

18  award an amount less than what Plaintiff's expert presents. Appeals are also possible as to class

19  certification, liability, and damages.  This Settlement avoids the above uncertainties and related

20  delays, while ensuring that Class Members receive substantial consideration now for a release of

21  their claims.

22                  b.      The Settlement Consideration and Allocation Are Fair

23          The Settlement is a fair and reasonable sum in light of the risks of further litigation.  Based

24  on data provided for the putative class and PAGA group, Plaintiff estimates that the class stood to

25  recover $1,999,566.80 in wages and $7,708,482 in penalties which would be subject to willfulness

26  and discretionary standards. In total, exposure comes to $9,708,048.80 if Plaintiff were to certify

27  all claims and succeed in establishing maximum damages at trial. Markley Dec., ¶¶ 18-19.

28

The $635,000 settlement value represents a 32% recovery of the wages – the firmer and less discretionary value of the case – and 7% of all potential recovery including all forms of available penalties. This is a fair and adequate result for the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one sixth (16.67%) of the potential recovery adequate in light of the plaintiff's risks); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (preliminarily approving a settlement representing 15% of the potential recovery).

Further still, the per-worker value of the Settlement is higher than in other approved independent contractor misclassification settlements against much bigger gig economy defendants like Uber and DoorDash. This settlement falls more in line with larger awards obtained against similar companies by public enforcers.

In a PAGA case addressing misclassification of gig workers, Uber paid just over $5 per worker.  Markley Dec., ¶ 20, Exhs. 4 (Uber final PAGA settlement order) and 5 (Uber motion to approve PAGA settlement).  In another gig worker misclassification case, as part of a hybrid settlement of class and PAGA claims, DoorDash agreed to pay $12,500,000 towards PAGA which would go to roughly 973,345 drivers providing services for DoorDash in California.  Markley Dec., ¶ 21, Ex. 6 (Final Approval Order and Judgment in *Marko v. DoorDash, Inc.*) at ¶¶ 11, 16 (reflecting amounts paid to settle PAGA and the number individuals that would receive the PAGA distribution).  This is a value of only $12.84 per PAGA group member.  Finally, in a public enforcement lawsuit against Handy Technologies, Inc. for misclassifying their gig economy cleaning and other handyman service providers, Handy agreed to pay $4.8 million in restitution to 25,000 statewide workers to settle misclassification claims ($192/worker).  Markley Dec., ¶ 22, Ex. 7. In public enforcement cases, defendants do not have arbitration and class certification hurdles to fall back on which usually generates a higher value.  Here, there are 4,000 gig workers in the Class, rendering the $635,000 Gross Settlement Fund on par with, vis-a-vis a pro rata comparison, the similar Handy settlement ($158/worker).  Markley Dec., ¶ 22.

Under the circumstances of this gig worker case, the relatively small amount of each individual settlement payment is fair, adequate and reasonable.  According to Defendant's data,

over the Class Period: (i) the average Vue lasted 13.73 minutes; (ii) Vuers were paid an average of $10.32 per Vue; (iii) the average Vuer completed about 3.5 Vuers per week, which equals to a Vuer spending an average of 50 minutes or so per week performing any iVueit-related work; (iv) Vuers received an average payment of $37.66 from iVueit per week; and (v) the average Vuer completed around 21 Vues over the entire Class Period. Stated differently, the average Vuer worked approximately 4.8 hours in total over the Class Period (average of 21 Vues completed x the average Vue lasting 13.73 minutes = 288.33 minutes or 4.8 hours). Given these figures, Defendant was prepared to argue that Vuers' average hourly pay was approximately $44, well in excess of any minimum wage, overtime rate, or other wage requirements. And because Vuers completed on average 50 minutes per week, Defendant was also prepared to argue that such limited working time would not be sufficient to trigger any daily or weekly overtime, or any meal or rest period requirements. Markley Dec., ¶¶ 23-24. These figures further support why this settlement is relatively strong compared with those against companies like Uber and Handy where the work involved – driving over long periods and providing more lasting services like cleaning and handyman work – is more time consuming. Given the relative allotment of time to complete the work in each case, the class here is better off.

In short, it is beyond dispute that Class Members were not full-time employees. Rather, Vuers largely performed the site inspections (i.e., Vues) on an intermittent, part-time basis.

In light of these challenges, Plaintiff believes the average Individual Settlement Payment of $93 and the minimum of $15 is a fair and adequate result. Markley Dec., ¶ 25. This is in addition to the PAGA-based compensation those that worked over the PAGA Period will receive. In gig worker cases where workers perform more sporadic and less hour intensive work, this result compares very favorably to cases discussed above like Uber, DoorDash, and Handy. *See* Markley Dec., ¶¶ 20-22, Exhs. 4-7.

Finally, the plan of allocation of the Settlement to Class Members is fair and reasonable. The Net Settlement Amount and PAGA Worker Payments will be allocated among Class Members on a pro rata basis based on the number of Vues completed during the Class Period. *See* Settlement,

1   ¶¶ 90-91; and *see*, *e.g.*, *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *5 (C.D. Cal. July 27, 2010)

2   (endorsing pro rata division).

3          *3.      The Attorneys' Fees and Costs Requests Are Reasonable*

4         Prior to the final approval hearing, Class Counsel plans to petition the Court for an award

5   of fees of $158,750 (25% of the Gross Settlement Fund), and an award of litigation expenses not

6   to exceed $17,500.00. Settlement, ¶ 79; Markley Dec., ¶ 26. Plaintiff's loadstar in this case exceeds

7   $100,000 so there will be less than a 1.5 multiplier on time put into the case. *Id.* This is fair and

8   reasonable such that notice should go out to the Class regarding the plan to seek these fees and

9   costs which will be further supported in a separate motion at the time of final approval.

10        Class Counsel have devoted significant time and expense to this case over the past year

11  and achieved a solid result for the Class. Class Counsel's fees will be tied directly to the amount

12  that is actually paid out to the Class, and the request is within the range of reasonableness,

13  particularly so in consideration of the instant case's complexity and the risks involved. *See, e.g.,*

14  *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding that while 25% is the

15  "benchmark," 33% is within the range of reasonableness based on a case's complexity and risks);

16  *Sypherd v. Lazy Dog Restaurants, LLC*, 2023 WL 1931319, at *4 (C.D. Cal. Feb. 10, 2023) (noting

17  that the modern benchmark is more like 30%); and *see*, *e.g.*, *Vizcaino v. Microsoft Corp.,* 290 F.3d

18  1043, 1051 (9th Cir. 2002) (surveying approved multipliers in class actions and finding that

19  multipliers between 1 and 4 are common).

20        Class Counsel have also incurred costs to litigate this matter.  Plaintiff intends to ask for

21  no more than $17,500.00 in cost reimbursements that Plaintiff will document for the Court at final

22  approval.  Settlement, ¶ 79. Plaintiff will also document hours incurred in seeking an award of

23  attorney's fees at the final approval stage.

24        *4.      The PAGA Settlement Is Reasonable and Should Be Approved*

25        PAGA provides that 75% of civil penalties recovered under the statute shall be paid to the

26  California Workforce and Development Agency ("LWDA") and 25% to aggrieved employees.

27  Cal. Lab. Code § 2699(i).  Here, the Settlement allocates $50,000 to the PAGA claims brought by

28  Plaintiff. Of that amount, $37,500 will be paid to the LWDA, and $12,500 will be paid to aggrieved

employees in California. Settlement, ¶ 81.  Because a settlement of PAGA claims settles claims that could otherwise be brought by the state, the trial court must "review and approve" any settlement of PAGA claims. Cal. Lab. Code, § 2699(l)(2).

The $50,000 PAGA settlement is reasonable. The strongest claims in this case were for unpaid wages and unreimbursed business expenses, which are not discretionary or subject to good faith defenses, as is the case for PAGA penalties.  Markley Dec., ¶ 27; Cal. Lab. Code, § 2699(e). Hence, the bulk of the Settlement goes to Settlement Class Members rather than the State via PAGA penalties, but the Parties still agreed to contribute a meaningful amount.  Still further, given that Plaintiff might fail to prevail on the merits of her misclassification claim, in which case no PAGA penalties would be recoverable, a PAGA payment of $50,000 is a reasonable compromise. *See*, *e.g.*, *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645, at * 1 (N.D. Cal. Feb. 16, 2011) (approving PAGA settlement payment of $7,500 to the LWDA out of $6.9 million common-fund settlement); *Ramirez v. Benito Valley Farms, LLC*, 2017 WL 3670794, at *5 (N.D. Cal. Aug. 27, 2017) (settlement of PAGA claim for 4.5% of exposure reasonable).

### 5.    The Proposed Enhancement Award is Reasonable

"Incentive [or service] awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In evaluating service awards, courts may consider "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Here, awarding an Enhancement Award of $10,000.00 to Plaintiff is consistent with a fair, just, and adequate settlement. *See generally*, Wilburg Dec., ¶ 4; Markley Dec., ¶ 28.

First, Plaintiff played a very active role in the prosecution of the case. She spent many hours of the past year actively assisting Class Counsel, including regular meetings and calls with counsel, being available to provide input during a full-day mediation session where she provided

1    valuable information to counsel and the mediator, and routinely gathering and producing

2    documents to Class Counsel. Wilburg Dec., ¶ 4; Markley Dec., ¶ 28. Second, in taking on the role

3    of class representative, Plaintiff gave up the right to individually control her own valuable claim

4    in favor of the interests of the Class. *Id.* The Service Award she seeks is also well-supported by

5    the overall value of this Settlement in that it will amount to just under two percent of the gross

6    settlement value ($10,000 / $635,000 = 1.5%). *See*, *e.g.*, *Alvarez v. Farmers Ins. Exch.,* 2017 WL

7    2214585, at *1 (N.D. Cal. Jan. 18, 2017) (assessing incentive awards against overall settlement

8    value).

9        At final approval, Plaintiff will submit a declaration documenting the time and effort she

10   put into litigating these issues and the risks she undertook. At this stage, Plaintiff merely asks that

11   the Court permit dissemination of the Notice to the Class identifying the Enhancement Award that

12   Plaintiff will be requesting at final approval.

13           *6.    The Court Should Appoint CPT Group as Settlement Administrator*

14       To ensure the fair and efficient administration of the Settlement, the Court should appoint

15   CPT Group ("CPT"), an experienced claims administrator, to distribute the Notice and administer

16   claims under the Settlement Agreement. *See* Markley Dec., ¶ 29.  CPT will be paid no more than

17   $25,000.00 to perform all the functions of the Settlement Administrator. Settlement, ¶ 81.  If any

18   portion of the anticipated $25,000 in administration expenses go unused, it will become part of the

19   Net Settlement Fund for distribution to Settlement Class Members.  *Id.*  CPT was selected after

20   soliciting bids from three different administrators, all of which provided bids within $1,000 of each

21   other. The entire administration costs are approximately a mere .04% of the Settlement.  Of the

22   bids provided, the Parties collectively chose CPT given each side's familiarity with their

23   administration.  Markley Dec., ¶ 29.  Lastly, CPT has security measures in place to protect class

24   member data and maintains insurance coverage to protect against errors in the settlement

25   administration process.  Green Dec., ¶ 9.  The Court should appoint CPT to distribute the Notice

26   and administer claims.

27

28

## B. The Proposed Notice is Adequate

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by a propos[ed settlement]." Fed. R. Civ. P. 23(e)(1). The settlement notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted). Here, the Notice of PAGA and Class Action Settlement and notice plan satisfy the requirements of Rule 23(e) and due process. The Notice clearly explains the nature of the action and the terms of the Settlement (including the Settlement Amount, individual Settlement Class Members' estimated recovery, the attorneys' fees to be paid, how settlement payments will be calculated, the claims that will be released, etc.); and how the Settlement Class Member may participate in, object to, or opt-out of the Settlement. *See* Settlement, Ex. B. This information is more than sufficient to satisfy Rule 23(e). *See, e.g.*, *Villegas*, 2012 WL 5878390, at *8 (approving a notice containing the same categories of information).

As described above in Section III(C), the proposed class notice plan also ensures that Settlement Class Members receive the best notice possible. In addition to running a National Change of Address search upon receiving the Class information from iVueit, Settlement Class Members will either receive notice via first-class U.S. Mail or through email or text. This is the best notice practicable. *See Misra v. Decision One Mortg. Co.*, 2009 WL 4581276, at *9 (C.D. Cal. Apr. 13, 2009) (use of NCOA database and appropriate skip tracing followed by mailed notice is the 'best notice that is practicable under the circumstances.'").

## C. Conditional Class Certification Is Warranted

A class action may be certified if all four prerequisites under Rule 23(a) are satisfied and at least one subsection under Rule 23(b) is met. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977). The requirements of Rule 23(a) are referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). As will be discussed below, these requirements are met here. In addition, the Parties agreed to certification of the Class under

Rule 23(b)(3) for settlement purposes which has the added requirement of "predominance." *Id.* Defendant does not oppose certification for the purpose of settlement only. As such, the Parties seek provisional certification of the Class.

### 1. Conditional Class Certification is Warranted Under Rule 23(a)

#### a. The Class is Sufficiently Numerous

The proposed class is composed of: "All individuals paid for property inspection, site photograph services work, and/or other Vue-related work in California at any time during the Class Period that was sourced through the iVueit App." *See* Settlement, ¶ 26, Ex. A at ¶ 37. Approximately 4,000 individuals meet this definition. Markley Dec., ¶ 22.

#### b. Significant Common Questions May Be Answered by Common Proof

Commonality is satisfied when there exists a common question "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). One common question here is whether Settlement Class Members are iVueit employees. Resolution of this question using common proof (including common agreements and policies) will establish iVueit's liability. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012); *Ludlow v. Flowers Foods, Inc.,* 2022 WL 2441295, at *6 (S.D. Cal. July 5, 2022) (a single significant "question of law or fact" suffices). The misclassification claim central to this proposed Class is susceptible to common, class-wide proof.

#### c. Plaintiff's Claims Are Typical

Typicality "is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). It asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). Here, Plaintiff alleges the same wrong as other Settlement Class Members: misclassification as

independent contractors with corresponding denial of basic wage protections. *See* FAC, ¶¶ 11- 34; *Smith v. Cardinal Logistics Mgmt. Corp.,* 2008 WL 4156364, at *5 (N.D. Cal. Sept. 5, 2008) (typicality satisfied where Defendant had a corporate practice of classifying delivery drivers as independent contractors). Thus, Plaintiff's claims are typical.

d.   <u>Plaintiff is an Adequate Representative</u>

Adequacy entails (1) no conflict of interest between the proposed representative and the proposed class, and (2) qualified, competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); Fed. R. Civ. P. 23(a)(4).

Plaintiff does not have any conflicts of interest with other Settlement Class Members; she shares common injuries with the Class and seeks relief that will benefit the entire Class. Plaintiff has actively participated in this case, including being available during a full-day mediation. Wilburg Dec., ¶¶ 3-4. Plaintiff's counsel is experienced in complex class action wage and hour litigation and has prosecuted this case vigorously. Markley Dec., ¶¶ 8-17.

2.   *Conditional Class Certification is Also Warranted Under Rule 23(b)(3)*

a.   <u>Common Questions Predominate Over Individual Questions</u>

Rule 23(b)(3) tests whether "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. Predominance focuses on liability, not damages. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 494 (C.D. Cal. 2006); *Salas v. Toyota Motor Sales, U.S.A., Inc.*, 2019 WL 1940619, at *13 (C.D. Cal. Mar. 27, 2019) (citing 4 Newberg on Class Actions, § 11:6, at 21 (5th ed. 2014)) ("Courts have … uniformly held that individual damage issues should not defeat class certification. . . ."). Indeed, individualized inquiries into the amount of pay owed to class members cannot defeat predominance. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-514 (9th Cir. 2013); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (predominance satisfied even though "damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment. . . .").

1    Predominance exists here. There are common, predominate liability issues under

2    California's employment tests. This alone warrants certification of the Class. Still further, common

3    issues predominate under each theory of recovery once Plaintiff establishes an employment

4    relationship further warranting certification.

5                        b.        A Class Action is Superior to Multiple Individual Actions

6    Class treatment is superior "whenever the actual interests of the parties can be served best

7    by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. In evaluating superiority,

8    courts examine: (a) the class members' interests in individually controlling separate actions; (b)

9    preexisting related litigation; (c) the desirability of the forum; and (d) manageability. Fed. R. Civ.

10    P. 23(b)(3). These factors support certification. Settlement Class Members have little interest in

11    individual control or separate actions (which are available if they opt-out) considering the

12    relatively low stakes involved.  Multiple actions would also be costly, inefficient, and could lead

13    to inconsistent results. There is no other litigation involving Vuers in California and this Court is

14    familiar with state wage claims.  Gaut Dec., ¶ 2.

15    **D.        The Court Should Set a Final Approval Hearing**

16    Finally, the Court should set a hearing for final approval of the Settlement on a date

17    appropriately scheduled to follow the date by which Settlement Class Members must file

18    objections to the Settlement and Class Counsel's request for attorneys' fees and costs.

19

20    [*Rest of page intentionally left blank.*]

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## VII. <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the proposed Settlement; (2) approve the form, content and method of distribution of the Notice of PAGA and Class Action Settlement; (3) appoint CPT Group as the Settlement Administrator; (4) approve the PAGA settlement and PAGA payment to the California Labor and Workforce Development Agency; (5) confirm certification of the Class; and (6) schedule a hearing regarding final approval of the proposed Settlement and the request for attorneys' fees, costs, and enhancement award payment.

Respectfully submitted:

Dated:  May 23, 2025                    **NICHOLAS & TOMASEVIC, LLP**

By:    */s/ Shaun Markley*
Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jake Schulte (SBN 293777)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jschulte@nicholaslaw.org

Attorneys for Plaintiff ALICE WILBURG

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT