UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE WILBURG,<br><br>    Plaintiff,<br><br>v.<br><br>IVUEIT, LLC,<br><br>    Defendant. | Case No. 24-cv-02642-AMO<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 36 |

In this putative class and PAGA representative action, Plaintiff Alice Wilburg alleges Defendant iVueit, LLC misclassified her and other current and former iVueit workers ("Vuers") as independent contractors, resulting in their underpayment. Before the Court is Wilburg's motion for preliminary approval of class action and PAGA settlement. Dkt. No. 36 ("Mot."). This Order assumes familiarity with the facts and procedural history of the case. Having carefully reviewed the motion and the relevant legal authority, the Court has determined the motion is appropriate for determination on the papers, and hereby **VACATES** the hearing set for September 18, 2025. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-6. The Court **GRANTS** Wilburg's motion for the following reasons subject to the modifications discussed herein.

**I.**    **DISCUSSION**

The settlement agreement defines the class as "all persons paid for property inspection, site photograph services work, and/or other Vue-related work in California at any time during the Class Period that was sourced through the iVueit App," and the Class Period is defined as March 21, 2020 through the date that the Court enters its Order preliminary approving the settlement. Settlement Agreement ("Settlement") (Dkt. No. 36-2) ¶¶ 26, 29. The Settlement provides for a

1  gross settlement amount of $635,000, which includes a $50,000 PAGA payment,[1] attorneys' fees
2  (up to one-third of the gross settlement amount), up to $17,500 in costs, $25,000 in administrative
3  expenses, and a service award of up to $15,000 for Wilburg. Settlement ¶¶ 78-82. The motion
4  notes that counsel only plans to seek one-quarter of the settlement amount in attorneys' fees
5  ($158,750) and a $10,000 service award. Mot. at 12 n.2. After accounting for these expenses, the
6  net settlement amount of $373,750 will be distributed to the estimated 4,000 class members and
7  PAGA workers, each of whom will receive a pro rata share of the settlement based on the amount
8  of work performed for iVueit, with a $15 minimum. *Id.* at 12-13. The Court first determines if
9  conditional certification of the class is appropriate before assessing whether the settlement is
10 fundamentally fair, adequate, and reasonable. Finally, the Court considers Wilburg's proposed
11 notice plan.

### A. Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that will bind absent class members. Courts need only conclude the settlement is fair, adequate, and reasonable – not that the settlement is the best possible outcome. *In re Calif. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025). Courts therefore may "neither rubberstamp the settlement nor unduly meddle in the parties' affairs." *Id.* Where a class action has settled before class certification, courts first determine whether class certification is appropriate before making a preliminary determination that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008); *see also* Manual for Complex Litigation, Fourth § 21.632 (FJC 2004). Courts then "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Finally, courts hold a hearing pursuant to Rule 23(e)(2) for final approval of the settlement.

//

//

---

[1] Out of the $50,000 PAGA settlement, the Labor and Workforce Development Agency will be paid $37,500 for its 75% share of civil penalties and aggrieved PAGA workers within the PAGA limitations period will receive a pro rata share of $12,500. Settlement ¶¶ 81, 91.

### 1. Conditional Certification

Class certification requires a plaintiff to satisfy Rule 23(a)'s requirements – numerosity, commonality, typicality, and adequacy – and one of the bases for certification in Rule 23(b). As discussed below, Plaintiffs have satisfied Rule 23(a) and Rule 23(b)(3).

First, because the class includes an estimated 4,000 individuals, it is sufficiently numerous that joinder of all members is impracticable. Accordingly, the first Rule 23(a) factor is satisfied.

Second, Rule 23(a)(2) requires commonality, i.e., that there are "questions of fact or law common to the class." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, a question common to the class is whether the class members are iVueit employees, and this question can be resolved using common proof, such as agreements and policies covering all class members. Thus, Rule 23(a)(2) is satisfied. *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 477 (N.D. Cal. 2017) (collecting cases) ("Plaintiffs satisfy the commonality requirement because whether Defendants misclassified its distributors as independent contractors under California law is a common question that is capable of common resolution for the class based on the Distributor Agreements that all putative class members signed").

Third, Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Courts should determine "whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Scwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Claims are typical if they are "reasonably co-extensive with those of absent members; they need not be substantially identical." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (internal quotation marks omitted). Wilburg is typical of the class because she alleges iVueit misclassified her and all Vuers as independent contractors. FAC ¶¶ 11-34; *Soares*, 320 F.R.D. at 477 (finding typicality where named plaintiff's claims "ar[o]se out of [Defendant's] policy of misclassifying Distributors under the same Distributor

3

Agreement" and therefore caused "a similar or common injury"). Thus, their "claims are based on the same legal theory." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 511 (N.D. Cal. 2007).

Fourth, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "tend[s] to merge" with the commonality and typicality requirements of Rule 23(a), and aims to ensure class members' interests "will be fairly and adequately protected in their absence," which can be determined in part by considering the "competency and conflicts of class counsel." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 n.13 (1982)). That Wilburg has established commonality and typicality is an indication class members' interests will be protected. Further, there are no signs of conflict between Wilburg, class counsel, and the proposed class, nor is there any suggestion Wilburg or her counsel will cease competently representing the class.

In addition to satisfying Rule 23(a), the proposed class must satisfy one of the Rule 23(b) requirements. Plaintiffs argue that certification under Rule 23(b)(3) is proper here, as common questions "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient resolution of the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is established where a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem*, 521 U.S. at 594). A common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* Here, common questions predominate because the issue of whether iVueit misclassifies its employees is susceptible to class-wide proof. That class members' individual damages may partially rely on individualized evidence does not destroy predominance. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (explaining that although the amount of damages is an individual question, not a common one, "damage calculations alone cannot defeat certification").

Superiority exists where it is determined that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider "(1) the class members' interests in individually controlling the prosecution or defense of

4

separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action." *Id.* Here, there is no indication that class members seek to individually control their cases, that any litigation concerning the controversy has already been commenced, that this forum is undesirable, or that it would be difficult to manage this case as a class action. Wilburg has therefore satisfied Rule 23(b)(3).

Because Rules 23(a) and 23(b)(3) are satisfied, the Court conditionally certifies the class.

### 2. Fair and Reasonable

Having determined that class certification is proper, the Court next considers whether the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d at 674-75. Preliminary approval of a settlement is appropriate where a court makes a preliminary finding that (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitable relative to each other. Fed. R. Civ. P. 23(e)(2). Here, the information submitted to the Court establishes that the Settlement satisfies these factors.

#### a. Adequate Representation

To determine whether class counsel and class representatives have adequately represented the class, courts consider the competence of counsel and the class representatives' participation in prosecuting the case. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 890 (N.D. Cal. 2020), *aff'd sub nom. In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102 (9th Cir. 2021). In support of her Motion, Wilburg submitted a declaration from class counsel describing counsel's experience with complex class actions and PAGA representative actions. *See* Declaration of Shaun Markley ("Markley Decl.") (Dkt. No. 36-1) ¶¶ 8-17. Counsel has prosecuted various employment class actions, including misclassification and independent contractor cases, *id.* ¶ 8-11, and given their experience, the Court finds counsel is sufficiently experienced and competent – an "indication that Plaintiffs have adequately represented the class." *Cottle v. Plaid Inc.*, 340 F.R.D.

356, 376 (N.D. Cal. 2021) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.")).

Additionally, Wilburg has demonstrated that she has adequately represented the class. As described above, Wilburg's interests are aligned with those of the class members, and she has advanced those interests on behalf of the class through the prosecution of this case. *Id.* at 376 (finding adequacy of representation where plaintiffs satisfied Rule 23(a)'s requirements and "willingly, constructively, and effectively contributed to the prosecution of the claims on behalf of the Class"). Wilburg states she has been "actively involved in the prosecution of this case" by "participating in regular meetings, reviewing the complaints and other documents filed with the Court, and gathering documents," as well as by making herself available to "provide input during a full-day mediation session." Declaration of Alice Wilburg (Dkt. No. 36-9) ¶ 4. This demonstrates adequate representation.

Because of Wilburg's counsel's experience and her diligence in representing the class by providing information to prove up her claims, the Court finds she has shown adequate representation. *See In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. at 890 (finding adequate representation where plaintiffs "vigorously represented the class" by providing information and evidence and were represented by "experienced class action litigators").

### b. Arm's Length

Courts must not preliminarily approve a settlement with signs of collusion or fraud, suggesting the agreement is not a product of arm's length negotiation. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Courts look for three "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. If present, the settlement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id.* at 946.

The first sign is when counsel receives a disproportionate distribution of the settlement. *Briseño v. Henderson*, 998 F.3d 1014, 1022-23 (9th Cir. 2021) (citing *Bluetooth*, 654 F.3d at 947).

Here, the Settlement provides that counsel may request up one-third of the gross settlement amount, Settlement ¶ 79, though the Motion states counsel intends to request no more than one-quarter, Mot. at 12.  Twenty-five percent of a common fund is the benchmark under the percentage-of-recovery method for assessing attorneys' fees, *see Bluetooth*, 654 F.3d at 942, so the first "subtle sign" is not present here.  *See Cottle*, 340 F.R.D. at 376-77 ("The court will address the exact amount of fees to be awarded in the order for final approval.  At this stage, however, it does not appear that counsel will receive a disproportionate share of the settlement.").

The second sign of collusion or fraud is when a settlement includes a "kicker" or "reverter" clause providing that unawarded attorneys' fees be returned to the defendant, rather than the class.  *Briseño*, 998 F.3d at 1023.  Here, there is no possibility of reverter to iVueit. Settlement ¶ 39.  The third sign is a "clear sailing" arrangement, *Briseño*, 998 F.3d at 1023, which is not present here, as the fees will come from the settlement fund and iVueit reserves the right to object to those fees.  Settlement ¶ 79; *Bluetooth*, 654 F.3d at 947 (noting a "clear sailing" arrangement is one in which payment of attorneys' fees is "separate and apart from class funds, [carrying] 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class").  Finally, the parties participated in a full day of mediation with an experienced mediator.  Settlement ¶ 13.  Though "not on its own dispositive," it "weigh[s] in favor of a finding of non-collusiveness."  *Bluetooth*, 654 F.3d at 948.

### c. Fair and Adequate Terms

Rule 23(e)(2)(C) requires that the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorneys' fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3) (requiring disclosure of "any agreement made in connection with the proposal").

First, the proposed settlement amount is $635,000.  Wilburg estimates the potential estimated exposure is $1,999,566.80 in wages and $7,708,482 in penalties for a total exposure of $9,708,048.80.  Markley Decl. ¶ 18.  The Settlement amount therefore represents a 32% recovery

1    of estimated exposure in wages and 7% of all potential recovery. Mot. at 19. The average
2    recovery per class member is estimated to be $93, with each member receiving at least $15.
3    Markley Decl. ¶ 25. In light of comparator cases provided by Plaintiffs, the Court finds that this
4    settlement amount is adequate. It provides for a notably higher average payment than several
5    similar cases involving workforce misclassification, in which DoorDash and Uber paid $12.84 and
6    $5 per worker, respectively. Markley Decl. ¶¶ 20-21. It is comparable to a public enforcement
7    suit involving misclassification of gig economy cleaning and handyman service providers against
8    Handy Technologies, Inc. that resulted in a payment of $192 per worker. *Id.* ¶ 22. The Court also
9    notes that the particularities of the work Vuers performed for iVueit suggest this Settlement is
10   appropriate. The parties estimate that over the class period, the average Vuer worked fewer than
11   five hours, and Wilburg posits that because the average hourly pay was $44 – well over California
12   minimum wage – and because Defendant would likely argue that such limited time working did
13   not trigger any daily or weekly overtime or meal or rest period requirements, the class would face
14   significant risks and hurdles if the litigation continued. Markley Decl. ¶¶ 23-24; Mot. at 17-18.
15   As a result of the Settlement, Vuers can avoid the uncertainties and delays inherent in further
16   litigation. Mot. at 18; *see Del Valle v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2025 WL
17   1651157, at *2 (N.D. Cal. June 10, 2025) (noting the settlement amount was fair in light of,
18   among other things, the risk of years of appeals). Taking into consideration comparable outcomes
19   and the risks and costs of pursuing further litigation, the Court finds this settlement is fair and
20   "within the range of reasonableness." *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-
21   HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (quoting *Ma v. Covidien Holding, Inc.*,
22   No. SACV 12-02161-DOC, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014)).
23         Second, the proposed method of distributing relief to the class is effective. Notice will be
24   distributed by first class U.S. mail for each class member and PAGA worker whose physical
25   address is known, and by email or text for those whose physical address is not known. Settlement
26   ¶ 94; *see Roberts v. Marshalls of CA, LLC*, No. 13-CV-04731-MEJ, 2017 WL 3314994, at *20
27   (N.D. Cal. Aug. 3, 2017); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 541 (N.D. Cal.
28   2007) ("First class mail is ordinarily sufficient to notify class members who have been

1  identified."). Third, the Settlement imposes a limit on the amount of attorneys' fees class counsel can request, and the terms of the award of attorneys' fees do not suggest the relief provided to class members would be unfair or inadequate. Finally, Wilburg has not identified any agreement required to be disclosed under Rule 23(e)(3).

The Court thus concludes the relief provided for the class is adequate and next considers whether the settlement treats the class members equitably.

### d. Equitable Treatment of Class Members

Rule 23(e)(2)(D), which requires that "the proposal treats class members equitably relative to each other," is satisfied here, as the Settlement provides each class member will receive a pro-rata share of the settlement fund that is directly proportional to the amount of work performed for iVueit during the class period. Mot. at 20; *De La Torre v. CashCall, Inc.*, No. 08-CV-03174-MEJ, 2017 WL 2670699, at *9 (N.D. Cal. June 21, 2017) (finding a pro rata distribution plan did "not favor certain Class Members over others"); *Rubio-Delgado v. Aerotek, Inc.*, No. 13-cv-03105-SC, 2015 WL 3623627, at *8 (N.D. Cal. June 10, 2015) (same). Courts "must carefully consider the disparity created by incentive payments . . . because 'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.' " *Wren v. RGIS Inventory Specialists*, No. C-06-5778 JCS, 2011 WL 1230826, at *31-32 (N.D. Cal. Apr. 1, 2011) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)). The Court does not find at this stage that the proposed incentive payment is excessive. Courts in this District "have indicated that . . . as a general matter, $5,000 is a reasonable amount." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *6-7 (N.D. Cal. Feb. 6, 2012). Wilburg notes that at the final approval stage, she "will submit a declaration documenting the time and effort she put into litigating these issues and the risks she undertook," Mot. at 23, and the Court will determine at that time whether there is sufficient evidence to justify a $10,000 service award. *See Wilson v. Tesla, Inc.*, No. 17-CV-03763-JSC, 2019 WL 2929988, at *15 (N.D. Cal. July 8, 2019), *aff'd,* 833 F. App'x 59 (9th Cir. 2020) (reducing service award from $10,000 to $5,000 where $10,000 was "4.1 times greater than the average class member award"); *see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at

9

*11 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019).

### B. Notice Plan and Final Approval Hearing

Where a court preliminarily approves a settlement, it must "direct notice in a reasonable manner to all class members." Fed. R. Civ. P. 23(e)(1)(B). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Wilburg's proposed notice plan meets that standard, as the notice sufficiently informs class members and PAGA workers of the Settlement's terms, their rights under the Settlement, the process for objecting, opting out, and receiving payment, as well as the date and location of the final approval hearing. *See* Notice of Settlement of Class Action (Dkt. No. 36-2). The Court therefore approves the text of the Class Notice, subject to two modifications on page 13 (Dkt. No. 36-2 at 75). First, Plaintiff shall strike from the Class Notice the requirement that any Class Member who files a written objection must appear at the final approval hearing. The sentence on page 13 that reads "It is not necessary for you to appear at the Final Approval Hearing unless you have timely filed an objection with the Court" shall instead simply read "It is not necessary for you to appear at the Final Approval Hearing." Second, the section titled "May I speak at the Final Approval Hearing?" shall be modified to include the deadline for a class member to file a Notice of Intent to Appear and to note that class members seeking to appear virtually at the hearing must make that request in their Notice.

Wilburg's plan for distributing the Class Notice is also adequate. The Class Notice will be sent via first-class U.S. mail, and by email or text for those class members and PAGA workers whose physical address is unknown. Settlement ¶ 94. The settlement administrator will remail any notices returned by the post office with a forwarding address and will conduct a skip tracing search for any notice returned as undeliverable. *Id.*

Finally, as to the settlement administrator, Wilburg obtained bids from three, all of which provided bids within $1,000 of each other. Mot. at 23. Wilburg ultimately chose CPT Group due

1   to the parties' familiarity with CPT's administration, Markley Dec. ¶ 29, and CPT employs

2   security measures to protect class member data and maintains insurance coverage in the event of

3   errors in the administration process, *see* Declaration of Julie Green (Dkt. No. 36-11) ¶ 9. The

4   Court therefore appoints CPT as the Settlement Administrator.

## II.  CONCLUSION

For the foregoing reasons, the Court finds the Settlement falls within the range of possible approval as fair, adequate, and reasonable and that there is a sufficient basis for notifying the class and for setting a final hearing. Thus, the Court **GRANTS** the Motion and **ORDERS** as follows:

1. The Court preliminarily certifies the proposed class for settlement purposes pursuant to Rule 23(b)(3). Class members are defined as: "All Persons paid for property inspection work, site photograph services work, and/or other Vue-related work in California at any time during the Class Period that was sourced through the iVueit App." The "Class Period" is the period from March 21, 2020 through the date of this Order.

2. The Court appoints Plaintiff Alice Wilburg as class representative and Craig M. Nicholas, Shaun Markley, and Jake W. Schulte of Nicholas & Tomasevic, LLP as Class Counsel.

3. With the modifications described in this Order, the Court approves the text of the Class Notice and approves its dissemination to class members and PAGA workers pursuant to the procedure described in the Settlement.

4. The Court appoints CPT Group, Inc. to serve as the Settlement Administrator and administer the Settlement in accordance with the terms and conditions of this Order and the Settlement Agreement.

5. The Settlement Administrator shall distribute notice to the class no later than October 24, 2025. Any Class Member who wishes to object to or opt out of the Settlement must do so within 45 days of the date notice is distributed. Any Class Member or PAGA Worker who wishes to challenge their estimated settlement payment amount or PAGA Worker payment amount must do so within 45 days of the date notice is distributed. Class Members and PAGA Workers seeking to opt out, object, or challenge their estimated payments must do so pursuant to the procedure described in the Class Notice.

6. Plaintiff's motion for attorneys' fees, costs, and class representative service award shall be filed no later than January 9, 2026.

7. Any Class Member seeking to speak at the final approval hearing, whether in-person or virtually, shall file a Notice of Intent to Appear by February 6, 2026 in accordance with the Class Notice.

8. The Court sets a final approval hearing for March 5, 2026 at 2:00 p.m. in San Francisco, 19th Floor, Courtroom 10, to assist the Court in determining whether to approve the Settlement, motion for fees, costs, and Wilburg's service award.

**IT IS SO ORDERED.**

Dated: August 26, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**